**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                PLAINTIFF

v.                                No. 4:14CR00010-12 JLH

TELLYS ARKEITH CLEMMONS                                      DEFENDANT

**OPINION AND ORDER**

Tellys Arkeith Clemmons has been indicted on charges of conspiracy to possess with intent to distribute cocaine hydrochloride and possession with intent to distribute cocaine hydrochloride. He has moved to suppress evidence seized from his vehicle on February 1, 2014.[1] For reasons that will be explained, the motion to suppress is denied.

The indictment in this case stems from an investigation that identified Hector Delgado and Juan Ramos as cocaine suppliers. Roosevelt Martin was identified as a kilogram quantity customer of Delgado and Ramos. In early November of 2013, through Title III interception of telephone calls, law enforcement officers learned that Ramos would be delivering cocaine to Martin. On November 4, 2013, law enforcement officers observed Ramos drive to Martin's residence and meet with Martin. After that meeting, Martin drove to a carwash where he was known to distribute cocaine. At the carwash, he met with an individual driving a green Toyota pickup truck bearing an Arkansas license plate that returned to Tellys Clemmons. The police reports identified the model of the truck as a Tacoma, when in fact it is a Tundra. Officers conducting surveillance later obtained

---

[1] Clemmons also moved to suppress a video recording of him in the back seat of a police car on that same date. Clemmons was recorded calling a female and directing that evidence be removed from his residence. In his post-hearing brief, however, he conceded that this claim is foreclosed by *United States v. Clark*, 22 F.3d 799 (8th Cir. 1994). Document #450 at 10 n.2.

the driver's license photograph of Clemmons and confirmed that he was the person driving the green Toyota pickup truck on November 4, 2013.

At the end of January 2014, law enforcement officers intercepted telephone calls indicating that Martin would be receiving four kilograms of cocaine from Delgado and Ramos. On February 1, 2014, Martin was arrested, and four kilograms of cocaine were found in his car. During an interview, Martin identified Clemmons as the intended recipient of two kilograms of cocaine and agreed to make recorded calls to Clemmons. During those recorded calls, Martin agreed to sell Clemmons two kilograms of cocaine and arranged to meet him "around the corner" to consummate the transaction approximately fifteen minutes after the last recorded call. Martin agreed to reduce the price by $500, but otherwise Martin and Clemmons did not discuss price. Martin informed law enforcement officers, however, that the normal price was $31,500 per ounce. Martin and Clemmons did not specify the location of the meeting other than "around the corner," but Martin told law enforcement officers that "around the corner" was reference to an area in the 900 block of Bragg Street in Little Rock. Officers then set up surveillance near the 900 block of Bragg Street. Shortly thereafter, the green Toyota Tundra with a license plate that returned to Clemmons drove to the 900 block of Bragg Street and parked for approximately fifteen minutes before driving away after Martin did not appear. The officers conducting the investigation arranged for a Little Rock police officer, David Green, to stop Clemmons' vehicle. Green did so, searched the vehicle, and found $62,335 in a black bag in the back seat, as well as a quantity of cocaine. Document #420 at 1.

The Eighth Circuit has explained:

> Under the so-called automobile exception, an automobile on a public street may be searched without a warrant as long as the searching agents have probable cause to believe evidence of a crime will be found in the vehicle. Probable cause for an automobile search exists if the facts and circumstances known by the police when

> they begin the search are sufficient in themselves for a person of reasonable caution to believe that contraband or evidence of criminal activity was in the vehicle. The assessment of probable cause is to be based on objective facts that would justify issuance of a warrant.

*United States v. Horne*, 4 F.3d 579, 585 (8th Cir. 1993) (internal citations and quotation marks omitted). Where probable cause is based upon information supplied by an informant, the central question is whether the information is reliable. *United States v. Morales*, 238 F.3d 952, 953 (8th Cir. 2001).

Here, Martin had no record of cooperation with law enforcement. Nevertheless, the information that he provided was corroborated by independent evidence and was therefore reliable. First, law enforcement officers surveilling Martin had seen him apparently distributing cocaine to Clemmons on November 4, 2013. Secondly, Martin's information was corroborated by recorded telephone calls in which he arranged to sell two kilograms of cocaine to Clemmons. He and Clemmons agreed to meet "around the corner," without further specifying the location. Martin informed law enforcement officers that "around the corner" was a reference to a location in the 900 block of Bragg Street in Little Rock. The officers set up surveillance of that location and, at the appointed time, the pickup truck bearing license plates that had returned to Clemmons arrived at that location. As in *Morales*, the repeated phone calls, the arrangement of the meeting between the suspects, and the totality of the circumstances corroborate the informant's story and together constitute probable cause. *Id*.

Clemmons still argues, however, that Green did not have probable cause to conduct the search and seizure. He acknowledges that an arresting officer need not be possessed of probable cause to uphold a search and seizure, as long as the collective knowledge of all of the officers involved in the investigation is sufficient to support probable cause and as long as there is some

degree of communication. Clemmons argues that sufficient facts were not communicated among the officers to establish a pool of information that would give rise to probable cause.

"When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication." *United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011) (quoting *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011)). In *Robinson*, the Eighth Circuit explained:

> Robinson argues the district court erred in applying the collective knowledge doctrine because Detective Thomas testified that he told the Patrol dispatcher only that "I need some officers to stop this maroon Cadillac." Officer Matthew Roebuck, who made the stop, did not testify at the suppression hearing. Therefore, Robinson argues, the government failed to present evidence of what "the officer who actually made the stop knew when he stopped the Cadillac." The district court properly rejected this argument because it misconstrues the requirement that the collective knowledge doctrine only applies if there is "some degree of communication." This requirement "serves to distinguish between officers functioning as a 'search team' and officers acting as independent actors who merely happen to be investigating the same subject." [*United States v. Gillette*, 245 F.3d 1032, 1034 (8th Cir. 2001)]. We have never required that all the relevant collective knowledge of the team be communicated to the officer who made the stop, the arrest, or the search at issue. [Citations omitted.] Here, it is undisputed that Officer Roebuck did not act independently. When instructed to make the stop, Roebuck became part of Detective Thomas's "team" for purposes of the collective knowledge doctrine. The presence of Detective Thomas when the stop was made confirms this conclusion.

*Id.* at 703-04.

Here, Green became part of the investigating team when he conducted the stop at the request of the law enforcement officers who were conducting the investigation. That he conducted the stop as a part of the team is confirmed by the fact that several DEA agents and local detectives who were participating in the investigation converged on the scene when Green stopped Clemmons. Document #431 at 51. Furthermore, Green testified that when he was asked to stand by in the area

4

prepared to make a stop, he was told that a confidential informant had placed a call to Clemmons to set up a meeting to make a narcotics transaction, so he knew the basic facts that gave rise to the probable cause. *Id*. at 58 and 66. Contrary to Clemmons' arguments, there was sufficient communication for the collective knowledge doctrine to apply.

The motion to suppress filed by Tellys Arkeith Clemmons is DENIED. Document #420.

IT IS SO ORDERED this 1st day of July, 2015.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE